UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DONA J. JACKSON,

                    Plaintiff,

                                                    03-CV-00577

        v.

NEW YORK STATE; NEW YORK STATE POLICE;
NEW YORK STATE POLICE TROOP E; JAMES W.
MCMAHON, New York State Police Superintendent,
Et Al.,

                    Defendants,

APPEARANCES:                              OF COUNSEL:

DONA J. JACKSON
Plaintiff *pro se*
Shiloh Acres
801 Howell Road
Port Byron, NY 13140

ELIOT SPITZER                             DOUGLAS J. GOGLIA
Attorney General of                       ASSISTANT ATTORNEY GENERAL
the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

HON. HOWARD G. MUNSON, SR. J.

## BACKGROUND

        Plaintiff's *pro se* Second Amended Complaint sets forth claims that, at several times over

the past 12 years, various defendants violated her due process rights by: (1) refusing to intervene

in an ongoing property dispute between plaintiff and her neighbors, and by not taking adequate

measures to protect her and her family from harassment at the hands of those neighbors, (Second

Amended Complaint, pp. 7-26, ¶¶ 1-20, 28, 32-34); (2) improperly and falsely arresting

plaintiff's son (Second Amended Complaint pp. 7-26, ¶¶ 21-23, 35-66, 71);

(3) using excessive force while arresting plaintiff's son (Second Amended Complaint pp. 7-26, ¶ 24); (4) retaliating against plaintiff by subjecting her to numerous false arrests and traffic citations after she exercised her First Amendment right to file complaints about the State Police (Second Amended Complaint, pp. 7-26, ¶¶ 67-77, pp. 27-41, 43-44); falsely arresting plaintiff on numerous occasions (Second Amended Complaint, pp. 27-41, 44, 53-54); (6) retaliating against her for engaging in a protest by "verbally attacking her".  (Second Amended Complaint, p. 42); and, (7) using excessive force against plaintiff (Second Amended Complaint, pp. 45-46).

Plaintiff alleges that the aforesaid behavior was part of a large conspiracy to deprive plaintiff of her constitutional rights, and to cloak the alleged illegal conduct of the State Police, that all of the numerous defendants took part in for over 10 years.  (Second Amended Complaint, p. 17, ¶ 48, p. 67, ¶ 75).

The complaint sets forth twelve causes of action: Violation of 42 U.S.C. § 1983 and the 14th Amendment by public authorities assaulting and detaining plaintiff; Failure of defendants to protect from unconstitutional harm; Police Officers Conspiracy to cover up misconduct and obstruction of justice; a Monell claim against the Municipal defendants; seven New York State common law claims for Assault and Battery; False Imprisonment; Intentional Infliction of Emotional Distress; Negligent Inflection of Emotional Distress, Negligent Hiring, Screening and Retention of police officers; Fraud and Perjury, and Respondeat Superior; and a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §1961, *et seq*.   The requested relief sought is injunctive, compensatory and punitive damages, sanctions, costs and fees.

Defendants claim that plaintiff's RICO claim should be dismissed because she has failed

to provide a required RICO Statement.  They also claim that plaintiff had no standing to assert claims on behalf of her son. In her reply papers, plaintiff states that defendants have misinterpreted her intentions with regard to her references to these two matters, because it was never her intention to file claims under  RICO or on behalf of her son.  In any event, the court will not consider these alleged claims, deem them abandoned, and they will be dismissed.

Currently before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  Plaintiff has entered opposition to this motion, and has cross moved for an order for the production of documents and to disqualify the New York State Office of the Attorney General from representing defendant state employees in any capacity in this action. Defendants have controverted both of these motions.

## DISCUSSION

The court will first consider plaintiff's cross motion to disqualify the Office of the New York State Attorney General from acting as counsel for the defendants.

§17 of the New York Public Officers Law provides for the defense and indemnification of a state employee who is sued under  42 U.S.C.§1983 for acts within the scope of his employment. The statute states that such an employee is entitled to representation by the Attorney General.

Plaintiff asserts that the Attorney General's Office did not respond to her correspondences, 15 Notices of Intention to File a Claim, or  to her original Complaint and First Amended complaints.  These allegations are insufficient to disqualify the Attorney General's Office from defending this lawsuit.

3

While the Attorney General is not compelled to answer every letter or complaint his office receives, the record shows that he did reply to plaintiff in 1995 and 1997 advising her that his office did not have jurisdiction in the matters mentioned in her mailings.

The state is not required to serve any response to a notice of Intention to File a Claim, even if it appears to be jurisdictionally defective.  DeHart v. State of New York, 92 Misc.2d 631; 401 N.Y.S.2d 417 (Ct. Cl. 1977). Quite simply, because a Notice of Intention to File a Claim is not a pleading, no response is required, it merely notifies the State that a claim against it may, in the future, be filed.  Id.  Additionally, the Notice of Intent to File a Claim requirement is not applicable to federal claims under §1983.  Felder v. Casey, 487 U.S. 131, 138-40, 108 S. Ct. 2302, 101 L. Ed.2d 123 (1988): (Day v. Moscow, 955 F.2d 807, 814 2d Cir. 1992)(noting inapplicability of New York notice of claim requirements to § 1983 suits).

Defendants did not reply to plaintiff's original Complaint because on March 24, 2004, plaintiff's then attorney, advised Magistrate Judge Peebles that he was going to file an Amended Complaint. On October 21, 2004, when plaintiff, then proceeding *per se*, advised the same Magistrate Judge that she would be filing the Second Amended Complaint, defendants' counsel stated that he would move to dismiss this complaint thereafter.

Defendants' Motion to Dismiss:

Motions to dismiss are governed by Federal Rule of Civil Procedure 12.   Under Rule 12(b)(6), a defendant may seek to dismiss the complaint for "failure to state a claim upon which relief can be granted."   The Court's analysis under Rule 12(b)(6) requires it to determine whether the facts alleged in the complaint would entitle the plaintiff to a legal remedy.  As a primary objective of the legal system is to obtain a determination on the merits, rather than a

4

dismissal based on the pleadings, motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) are generally viewed with disfavor, and the standard for dismissal under Rule 12(b)(6) is quite narrow, that is, "to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept plaintiff's allegations at face value, ... must construe the allegations in the complaint in plaintiff's favor, ... and must dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of this claim which would entitle him to relief." Rapf v. Suffolk County of New York, 755 F.2d 282, 290 (2d Cir.1985);  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L. Ed.2d 80 (1957).

The task of the court in ruling on a Rule 12(b)(6) motion is not to determine whether plaintiff will prevail in the action,  but "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir.1984). In undertaking this task, the court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987).  Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal.  Gant v. Wallingford Board of Education, 69 F.3d 669, 673 (2d Cir.1995) (citing Scheuer, supra, 416 U.S. at 236, 94 S.Ct. at 1686).  The court must allow plaintiff to develop his/her case at this stage of the proceedings. United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir.1981).

Furthermore, this standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted pro se.  Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir. 1991) *cert. denied,* 504 U.S. 911 , 112 S.Ct. 1943, 118 L .Ed.2d 548 (1992).

5

As the Supreme Court has stated, "[b]y the plain terms of §1983, two--and only two--allegations are required in order to state a cause of action under that statute.   First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L. Ed.2d 572  (1980).

The Second Amended Complaint:

The proscription on "technical forms of pleading" lies at the heart of our system's approach toward so-called notice pleading.  Fed.R.Civ.P. 8(e)(1).  The Supreme Court has held that the simplified pleading standard set forth in  Rule 8(a) of the Federal Rules of Civil Procedure applies generally to all civil actions.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512,122 S.Ct. 992, 152 L. Ed.2d 1 (2002).

The Second Circuit has frequently noted that the pleadings of *pro se* litigants should be "construed liberally," Tapia-Ortiz v. Doe, 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ), and should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations,"  Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir.1997). It also held that, when reviewing pro se submissions, a district court should look at them "with a lenient eye, allowing borderline cases to proceed." Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (*per curiam*).   In fact, these exhortations are not at all unique to *pro se* cases. All complaints must be read liberally; dismissal on the pleadings never is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory. Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir.2004);   Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L. Ed.2d 59 (1984). But as low as the requirements are for

a complaint drafted by competent counsel, we hold pro se complaints to an even lower standard. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L. Ed.2d 652 (1972) (*per curiam*).

Basically, the Rules command courts to never exalt form over substance.  Fed.R.Civ.P. 8(f). ("All pleadings shall be so construed as to do substantial justice.").  Thus, technical pleading irregularities may be excused as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party. Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir.2004); Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir.1986).

Particularly disregarded may be harmless violations of Rule 10(b), which requires a complaint to contain separate, numbered paragraphs for each averment.  Fed.R.Civ.P. 10(b). That rule was designed to "facilitate the clear presentation of the matters set forth," so that allegations might easily be referenced in subsequent pleadings. Id.; O'Donnell v. Elgin, Joliet & Eastern Railway Co., 338 U.S. 384, 392 & n. 6, 70 S.Ct. 200, 94 L. Ed. 187 (1949).  Rule 10 should therefore not be read as an exception to the rule against technical forms of pleading.

It follows that, where the absence of numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted. Original Ballet Russe, Ltd. v. Ballet Theater, Inc., 133 F.2d 187, 189 (2d Cir.1943). And even where a violation of Rule 10(b) is not harmless, dismissal is not typically the appropriate course of action. Once a defendant has been served with a complaint that is defective in this way, it should be met with a motion for a more definite statement under Rule 12(e) or a motion to strike under Rule 12(f), rather than a motion to dismiss under Rule 12(b). Anderson v. District Bd. of Trustees of Cent. Florida Community College, 77 F.3d 364, 366-67 (11th Cir.1996);  International Tag & Salesbook Co. v. American Salesbook Co., 6 F.R.D. 45,

7

47 (S.D.N.Y.1943).

Addressing violations of Rule 10(b) in this particular context, has long been the approach taken by courts in this Circuit.  Merrin Jewelry Co. v. St. Paul Fire & Marine Ins. Company, 301 F. Supp. 479, 481 (S.D.N.Y.1969);  Leon v. Hotel & Club Employees Union Local 6, 26 F.R.D. 158, 159 (S.D.N.Y.1960);  Hernandez-Avila v. Averill, 725 F.2d 25, 28 (2d Cir.1984) (affirming dismissal of complaint for violations at Rule 10(a) and 11 where such violations "were not mere technical flaws").

With these standards in mind, the court examined the Second Amended Complaint.  This single spaced document, while lengthy, contains explicit descriptions of 50 - odd defendants, their official positions, and their alleged roles in the alleged denials of plaintiff's rights, as well as a surfeit of details concerning when and where each of the denials took place.  Despite its length, it is neither vague nor incomprehensible, and it clearly pleads some claims that cannot be termed frivolous on their face. For example, plaintiff asserts that while she was engaged in lawful conduct, various defendants combined and conspired to deprive her of due process rights on numerous occasions by, *inter alia*, 11 false arrests while she was engaged in lawful conduct, false imprisonments, using excessive force, and causing her mental and physical distress.  She also maintains that despite several timely written requests to several state and local officials, defendants' illegal conduct continued unabated.  These allegations are clear and specific enough to give the defendants notice of the ways in which they are claimed to have violated plaintiff's rights, and it cannot be said that in support of such a pleading that plaintiff can prove no set of facts that would entitle her to relief.  Consequently, the complaint cannot be dismissed for failing to comply with the pertinent requirements of Federal Rules of Civil Procedure 8 and 10.

8

The Statute of Limitations:

Defendants contend that because the original Complaint in this action was filed on May 9, 2003, only claims which arose since May 9, 2000 are timely for § 1983 purposes. Moreover, given that each constitutional violation of which plaintiff complains could have been a constitutional claim in its own right, plaintiff cannot rely on the "continuing violation theory to evade the applicable statute of limitations, citing, Konigsberg v. Lefevre, 267 F. Supp. 2d 255, 262 (N.D.N.Y. 2003).

Under the continuing violation doctrine, if a plaintiff has experienced a " 'continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir.1992) (quoting Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 25 (2d Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 148, 88 L. Ed.2d 122 (1985)). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to a defendant's discriminatory policy or practice, including those that would otherwise be time barred." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996); Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir.1993) (Under the continuing violation exception, a charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612, 128 L. Ed.2d 339 (1994). Although the continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination, and although acts so "isolated in time ... from each other ... [or] from the timely

9

allegations[ ] as to break the asserted continuum of discrimination" will not suffice, Quinn v. Green Tree Credit Corp., 159 F.3d at 766, a continuing violation may be found "where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994).

§ 1983 claims are governed by state statutes of limitations. Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 85 L. Ed.2d 254 (1985); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir.1994). In New York, such claims are governed by the general three year personal injury limitations period. Owens v. Okure, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L. Ed.2d 594 (1989); Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir.1997); N.Y.Civ.Prac.L. & R.§ 214(5) (McKinney 1996). Accrual of the claim, however, is a question of federal law. Ormiston v. Nelson, 117 F.3d at 71. A §1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir.2002) As noted above, this action was commenced on May 9, 2003. Accordingly, all conduct occurring within three years of that date is timely for purposes of plaintiff' § 1983 claims.

The applicability of the continuing violation doctrine to §1983 civil rights actions is unclear. The doctrine is largely a creature of Title VII employment discrimination law and courts have been reluctant to apply it outside that context. LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097, 1105 n. 3 (6th Cir.1995); McGregor v. Louisiana State University Board of Supervisors, 3 F.3d 850, 866 n. 27 (5th Cir.1993); Oyler v. Finney, 870 F. Supp. 1018, 1023 (D. Kan.1994) (citing cases), aff'd, 52 F.3d 338, 1995 WL 225270 (10th Cir.1995); but see Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir.) (applying

10

doctrine to a §1983 case), *cert. denied*,  522 U.S. 914, 118 S.Ct. 298, 139 L. Ed.2d 229 (1997); Redding v. Anne Arundel County, 996 F. Supp. 488, 490-91 (D. Md.1998) (suggesting doctrine applies);  Bremiller v. Cleveland Psychiatric Institute, 879 F. Supp. 782, 790 (N.D. Ohio 1995) (applying doctrine).

In  Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir.1994) the Second Circuit applied the doctrine to a §1983 claim without any discussion.  Kim v. Dial Service  International, Inc., 1997 WL 5902, at *5 (S.D.N.Y. Jan. 8, 1997).  It must be concluded from Cornwell, however, that the doctrine applies to §1983 claims in this circuit.  Applying the same analysis used above, plaintiff has established a continuing violation with respect to her claims under §1983.

Eleventh Amendment Immunity:

Defendants are correct when they state that the Eleventh Amendment bars suits against the state  for money damages to be paid from the state's treasury, even if an individual officer is named as a defendant.  Ford Motor Company v. Department of the Treasury, 323 U.S. 459, 464, 65 S. Ct. 347, 350, 89 L. Ed.2d 389 (1945).

This does not mean, however, that individual capacity claims are also barred.  Although the Second Amended Complaint may not contain an expressed individual capacity pleading, "we have traveled too far in the direction of modern pleading to return to the rigid pleading rules of the past.  Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-103, 2 L. Ed.2d 80 (1957).  In place of express pleading, we look to the totality of the complaint as well as the course of proceedings to determine whether the defendants were provided with sufficient notice of potential exposure to personal liability. The following aspect of the present case attests to defendants' notice of individual capacity claims: [plaintiff's] Second Amendment Complaint seeks punitive

damages, which are only available in individual capacity suits." <u>Yorktown Medical Laboratory,</u>

<u>Inc. v. Perales</u>, 948 F.2d 84, 88-89 (2d Cir. 1991);  <u>Smith v. Wade</u>, 461 U.S. 30, 35-36 & n. 5,

103 S.Ct. 1625, 1629-30 & n. 5, 75 L .Ed.2d 632 (1983);   Shabazz, 852 F.2d 697, 700 (2d Cir.

1988).

<u>State Police Not Obliged to Arrest Plaintiff's Neighbors:</u>

Defendants contend that the State Police had no duty to investigate or make arrests in

plaintiff's contentious property boundary dispute with her neighbors.  Plaintiff points out,

however, that the boundary dispute was legally settled by a survey made in March 1993, and it

was never  the basis for the continuous unlawful harassment and other misdeeds inflicted by her

neighbors which are the foundation for her lawsuit.

There were  several  court  issued  orders  of  protection  in  place  forbidding criminal

harassment of her  and her family by her neighbors.  New York Criminal Procedure Law  530(13)

provides :

> 6. In any proceeding in which an order of protection or temporary order
> of protection or a warrant has been issued under this section, the clerk of
> the court shall issue to the victim and the defendant and to any other person
> affected by the order, a copy of the order of protection or temporary order of
> protection.  The presentation of a copy of such order or a warrant to any police
> officer or peace officer acting pursuant to his special duties shall constitute
> authority for him to arrest a person who has violated the terms of such order
> and bring such person before the court and, otherwise, so far as lies within his
> power, to aid in securing the protection such order was intended to afford.

Plaintiff alleges that, when the unrelenting criminal harassment continued, she complied

with the above statute, presented the order of protection to the State Police, told them that it had

been violated, and requested that the order be enforced, but no action was taken, and the criminal

harassment continued unabated.

12

Retaliation Claim:

To establish a First Amendment retaliation claim, a "plaintiff must prove: (1) he/she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village Of Suffern, 268 F.3d 65, 73 (2d Cir.2001) (citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir.1998)). Defendants claim that the allegations in the Second Amended Complaint fail to satisfy any of the three requirements of this test.

Initially, the court will consider whether plaintiff's filing of many complaints with New York State Police and State officials, and her alleged unsuccessful efforts in seeking to have the defendants arrest the violators of her court orders of protection brought and before the issuing court constituted conduct protected by the First Amendment, and "The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." Gagliardi v. Village of Pawling, 18 F.3d 188, 194. (2d Cir. 1994). Indeed, "[t]he Supreme Court has described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.' " Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988) (quoting United Mine Workers v. Illinois State Bar Association, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L. Ed.2d 426 (1967)). It is axiomatic "that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right" to petition government for the redress of grievances. Lott v. Andrews Center, 259 F. Supp.2d 564, 568 (E.D. Tex.2003) (stating that there is "no doubt" as to the existence of this right). This right applies equally to the victims of crimes. Id. at 570-71. The court concludes that plaintiff's actions in

13

seeking enforcement of her orders of protection were protected by the First Amendment.

The second element to be considered is whether "defendants' actions were motivated or substantially caused by his exercise of that [First Amendment] right," has been met.

"The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint." Gagliardi, 18 F.3d at 195. Indeed, "[w]hile a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Id. Nevertheless, "[t]o survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir.2000) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983)).

The Second Amended Complaint indicates that plaintiff has sufficiently alleged the "requisite nexus," Gagliardi, 18 F.3d at 195, between plaintiff's exercise of her First Amendment rights and the alleged retaliatory actions of the defendants.  The complaint states in specific details how plaintiff was arrested by named New York State Police personnel eleven times but was never convicted of committing any crime, was falsely imprisoned 4 times and twice involuntarily in a psychiatric center, and that on four occasions, four separate quorums of psychiatrists found that plaintiff was not suffering from any psychological disease and/or disorder.  The plaintiff has alleged sufficient facts to satisfy the second element of the retaliation claim.

In the third element, the "plaintiff must show ... that his First Amendment rights were 'actually chilled.' " Curley v. Village of Sufferen, 268 F.3d 65, 73 (2d Cir. 2001)(quoting Davis

14

v. Village Park II Realty Co., 578 F.2d 461, 464 (2d Cir.1978) and Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L. Ed.2d 154 (1972)).  " 'Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.' "  Id. Indeed, "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."  Id.;  Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001) (police officers' transportation of plaintiff to psychiatric ward in retaliation for his derogatory remarks and threats to sue them "has an obvious chilling effect").

Defendants contend that plaintiff's use of her First Amendment rights were not chilled because she was able to institute this lawsuit. However, that the requirement of a chilling effect is inappropriate in the unusual circumstances of the present case, where the exercise of First Amendment rights allegedly caused the person exercising them to be subjected to severe punishment, specifically, the above mentioned eleven arrests, none of which led to a conviction and her involuntary transport to psychological evaluations where it was determined that she was not suffering from any psychological disease and/or disorder. Indeed, the fact that plaintiff resisted these tactics by defendants and continued to insist that defendants enforce her judicial issued orders of protection should not constitute a free pass for alleged police conduct that was constitutionally deficient.  The court finds that the allegations in the Second Amended Complaint state a legally sufficient First Amendment retaliation claim.

Conspiracy:

To survive a motion to dismiss, a § 1983 conspiracy claim must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity;  (2) to act in

concert to inflict an unconstitutional injury;  and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999); Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir.2002).

Plaintiffs' conspiracy claim will be dismissed because it does not allege an agreement between a state actor and a private entity, and because all of the alleged co-conspirators are employees of the New York State and are members of the New York State Police.  "Where the individual defendants are all employees of the institutional defendant, a claim of conspiracy will not stand." Burrell v. City University of  New York, 995 F. Supp. 398, 414 (S.D.N.Y.1998) (citing Everston v. State of New York Mortgage Agency,1992 WL 6190, at *6 (S.D.N.Y. Jan. 3, 1992) (conspiracy claim failed as a matter of law where all of the individual defendants were employees of SONYMA at the time of the alleged conspiracy)). Capital Imaging Associates., P.C. v. Mohawk Valley Medical Associates., Inc., 996 F.2d 537, 542 (2d Cir.1993) (unilateral conduct on the part of a single enterprise falls outside the purview of the Sherman Act, prohibiting conspiracies in restraint of trade); Ritzie v. City University of New York, 703 F. Supp. 271, 277 (S.D.N.Y.1989) (conspiracy requires participation by an external party).

Qualified Immunity:

A defendant presenting an immunity defense on a  Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route.  Not only must the facts supporting the defense appear on the face of the complaint, Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74, (2d Cir. 1998) but, as with all  Rule 12(b)(6) motions, the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support  of his claim that would entitle him to relief."

Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir.1992).  Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

Qualified immunity is available only if the defendant's actions were objectively reasonable under the legal rules that were clearly applicable at the time of his actions.   Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed.2d 396 (1982).   A defense of qualified immunity cannot ordinarily support dismissal under  Fed.R.Civ.P. 12(b)(6).  Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir.1983).   Plaintiff alleges violations of her constitutional rights and, based on the complaint alone, it does not appear that defendants' actions were objectively reasonable.  Further factual information is necessary, therefore, to determine whether defendants are entitled to qualified immunity.  Lifiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988).

Accordingly, plaintiff's cross motion to disqualify the New York State Attorney General's Office from acting as counsel for the defendants in this lawsuit is **DENIED;** defendants' motion pursuant to Rule 12(b)(6) is **GRANTED** as to plaintiff's RICO claim, the claims asserted on behalf of her son and the conspiracy claim, and these claims are **DISMISSED;** the motion is **DENIED** in all other aspects.

**IT IS SO ORDERED**.

Dated: August 11, 2005
   Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge

17